The next case today is Jose R. Hernandez v. Richard M. Shove, Appeal No. 22-9005. At this time, Mr. Ehrhard, please introduce yourself on the record to begin. All your Honors, James Ehrhard, on behalf of Richard Shove, the Appellant Petitioner, if it please the Court. I'd like to reserve two minutes, if I may, for rebuttal. You may have two minutes. Thank you. Your Honors, this case, at its foundation, is asking the Court to, in essence, vacate the bankruptcy court's denial of discharge of Mr. Shove on the 727A3 and A4. It also allows the Court to revisit its Simmons precedent and maybe put some guardrails on it. It also asks the Court to review the due process violations that occurred against Mr. Shove at the trial. Let me begin with the due process issues. We'll actually go with 727A3-A4. The Court denied the discharge under A4 because... Excuse me, Counsel, before you get to that, am I correct that if we were to affirm either the A3 or the A4 finding, that that ends the matter? We don't have to affirm both in order for the Petitioner to lose? That is correct, Your Honor, A3 or A4. In essence, I think you're referencing the BAP's opinion that it took A3 so it didn't have to get to A4. Let me begin with the A3, then. The bankruptcy court did A3 and A4, and the BAP allowed it under A3 only. In doing the A3 decision, the Court made the determination that it didn't have to examine the due process rights. I think the BAP is incorrect on A3. It stated that Mr. Shove failed to provide, let's call them post-fire records. As the record shows, Mr. Shove had, throughout his life, owned a number of rental properties. But as we got closer to bankruptcy, most of them were in receivership or foreclosure. I believe when, at the eve of bankruptcy, he had nine properties, and I believe only two or three were still receiving rents. The others were in foreclosure or receivership. What were the record-keeping practices before the fire and then after the fire, and were they different? As the record indicates, prior to the fire, not prior to the fire, a few years prior to the fire, when they had a number of rental properties, they kept bills, utility bills and so on, in boxes. And on occasion, as I recall the record stated, they would take receipts for rent rolls. But there was, as far as I recall, no specific rundown of each property and receipts to attach them. A fire occurred, which Judge Katz conceded in her order, that destroyed most of the records, and he could not be denied discharge for that because it was simply out of his control. About two years after the fire, he did collect rents. But it's not disputed that he only had maybe two or three properties with only a small number of units. He was like a guy in Worcester with a triple deck or maybe six units. And he did not keep rental receipts for that. The one witness brought in by… Five minutes remaining. Excuse me. Yes. Is your argument that the abandonment of the practice of keeping documents is entirely reasonable and that the bankruptcy judge who rejected that idea is reasonable because the number of properties had declined? Absolutely, Your Honor. If you have three or four units left… Okay, why is that sensible? You still have IRS reporting requirements. You still have property depreciation. It's comparable, Your Honor, and that's really what the crux of the A3 question is. If you have three or four units collecting rents and you're not keeping receipts for those rent rolls, is that failure to keep those rent roll receipts a non-dischargeable event? But this isn't simply a failure to keep rent roll receipts. This is a failure to keep any meaningful records. If a property owner doesn't keep rent roll receipts but keeps detailed records of what rent has been received the way a normal landlord would, I don't think the bankruptcy court or any court would have a problem. As I believe the record shows from Mr. Shove's testimony, and I believe it's not a dispute, Mr. Shove provided a ledger of activities on those rental properties. The only thing they didn't have was actual receipts. But even as I think the BAP mentions in its opinion in the First Circuit's precedent, a small farmer or an individual with a business which is open for a month at Christmas time isn't necessarily required to keep that kind of rent roll. The fact is on the eve of Mr. Shove's bankruptcy and about a year and a half before that, he was an individual that happened to have three or four units. And the argument that he has to have rent receipts for each of them is simply not incorrect, nor does the precedent show that. If this court is to uphold Judge Katz's decision that under A3 the debtor can be denied a discharge because he didn't have receipts for three or four units on a year and a half before bankruptcy, then any innocent debtor is exposed to non-dischargeability here. Excuse me. Yes, Your Honor. I don't quite understand the argument. There is a suggestion that his failure to keep a complete set of records is in and of itself unreasonable. But once the fire destroyed the documents, that was not held against you. It was not. Okay. So now, if I understood what you just said, he had kept records as to the three or four units he owned prior to the fire, but then he changed his practice and didn't keep any records after the fire? So when did he reduce the property to three or four units? Your Honor, I don't believe the record shows that he kept a precise rent-to-rent monthly. You are missing entirely my question. At what point did he change? You made the argument that this should all be excused because he moved from owning a number of properties only to owning a few, albeit they could be multi-apartment properties. I'm asking you, when did that reduction take place? Before the fire or after the fire? I believe, Your Honor, and I'm not sure the record says this, but after the fire, his financial situation deteriorated rapidly. It was actually going on before the fire occurred where there were nine units that he owned, but I believe except for two of the units, maybe two or three, they were in foreclosure receivership, so therefore they were no longer performing. When you say units, you mean buildings? I actually mean actual apartments, Your Honor. In other words, when you say two or three units, he only owned a total of two or three apartments? I believe the record shows, it may have been three or four, Your Honor, and if I'm correct, it was very few. So when you say units, we're not talking a 20-unit building, a 30-unit building, no, we're not talking about that. We're talking small residential properties up in the Berkshires, Your Honor, up in Lee Lennox. Okay, at some point after the fire, the nine apartments, you're saying the record shows it gets reduced to two or three apartments? It becomes there are only income-producing, a few apartments left, meaning that… Okay, so he had others that were in foreclosure. Okay, so even if they're in foreclosure, why don't you keep records? Because as I believe the record shows, they weren't income-producing, he wasn't collecting any rents for them. So by the time on the eve of bankruptcy, he's not collecting a lot of rents. He's simply not collecting a lot of rents. On the eve, okay, all right. There's a factual change here. Often out here, he owns a lot of units, he's making real estate, and as the years pass, the real estate starts to fall in. He's losing property for foreclosure or receivership. In the period of time prior to the bankruptcy, he has almost very few income-producing units. Okay, thank you. You've answered the question. And that's the fundamental issue here. If you take the record, this is a man who had very few rental apartment units that he's earning income from. I want to ask you a totally different question. Do any of your arguments related to the surprise and sanctions for failure to disclose evidence relate to the 727A3 denial? Or do you agree that they all relate to the A4 denial? And I thought about myself before the hearing. I think it all relates to A4 generally, you know, the Polk County deed. And the E-Trade account? Right. The issue of the rent rules. I mean, the trustee was on the stand, or even Mr. Shove was on the stand. He testified how he walked the units, the apartment units, with the trustee. And they met with the tenants. And one tenant was on the stand that we didn't put on. It was the only tenant that put on the stand who testified. Mr. Shove didn't give us receipts. He gave the tenant something for proof he received a receipt. He paid, but he didn't keep one himself. And I think it's under the Simmons standard. It has to be under the circumstances and the context of the time. In the Simmons case, which I handled, by the way, he had 27 units. Five of them he only reported as taxes. This is apples to oranges. This is an individual at the time of bankruptcy in the year or so preceding only had a few number of actual apartments collecting rents. And the bankruptcy court denied him a discharge because he didn't have records to support these rent rules. I think if you ask anyone who owns a six-unit in South, they don't necessarily keep a receipt of every rent they receive. But he did provide a ledger according to the records saying, here's my units. This is the rent I collected. What more can an individual do? If I look at Judge Katz's decision, you have to have an actual receipt to show each rent collected. Most people don't do that. They may keep a ledger or they may keep nothing. If you've got four units, it's pretty easy to reconstruct what you earn from income. If the court allows this to stand, this decision, what is done is taken Simmons and put it on steroids. Simmons, it was ________________ documents. In this case, in this case – Are you still there, Your Honor? Yeah, sorry. You broke up for about 30 seconds. So in this case, Your Honor, the facts are fundamentally different. This individual had a few, far less than Simmons, rental, income-producing apartments. Not the apartments. And he was denied a discharge. Even the judge said, even Judge Katz said, the fire did not play a factor here. She said these things. I believe you're over time. I'm sorry. I think Mr. Toomey, we couldn't hear him. But you are over time. You have two minutes for rebuttal. Thank you, Your Honor. I appreciate it. Thank you, counsel. At this time, Mr. Earhart, please mute your audio and video. Yes. And Attorney Spinola, at this time, if you could unmute and introduce yourself on the record to begin your response. Good morning. My name is Cynthia Spinola. I represent the appellee, Jose Hernandez. May it please the court. My brief very thoroughly and I believe thoughtfully addressed some of the issues that were raised by the defendant's appeal in his brief. I'd like to address the issue of, of course, this is a, you know, a clear error standard of review, absent legal error. It's as the decision in Great Island condos held that where there is no error of law, there is a formidable standard to overcome. And I would submit that the findings of fact as articulated in her 40-page brief and decision clearly support that this decision should stand. There was no error of law and the facts were found thoughtfully. I'd like to address the issue of, I think the 727-3 case has been, or appeal has been addressed carefully in my brief. And I would submit that the, again, the counsel for the defendant has misrepresented to the court that there was a so-called ledger provided by the defendant to the trustee upon the trustee's request. In fact, there was no ledger. What he provided in Exhibit 45 was a statement over a one-year period for each apartment, what he hoped, anticipated, aspired to receive for each of the units. He never once provided any contemporaneous record or even later developed record of what his income was from the units. Moreover, because of that problem, the trustee asked the defendant to provide and to file his 2017 tax records and to provide the 2016 tax records. He did that. The tax records were of no help to the trustee in determining the financial circumstances of this defendant because they were based upon so-called worksheets of what the defendant provided his tax preparer. He is not a CPA. This Mr. Hoffnagle was not a CPA. Mr. Sho gave a handwritten form stating what his income and expenses were. There was never a review of any business records or apartment records. Moreover, the defendant absolutely failed to produce any contemporaneous record of his financial affairs, either his personal or his business affairs. I'd like to address the motion to dismiss issue. Rule 15 of the Federal Rules of Civil Procedure apply to the bankruptcy proceedings, adversary proceedings. At the time that Mr. Sho, the defendant, was confronted with the Polk County records, the procedural setting was that I had called him on direct. He, during his cross, denied having any other properties, and on my redirect, I inquired about the Polk County property. Now, we're talking about the 727A4A matter. He, oh, all of a sudden remembered that he had it, had forgotten all about it. Of course, the judge didn't believe that he really forgot about it because he actually paid taxes on that property one year after filing for bankruptcy. He never disclosed the existence of that property. The defendant's attorney never objected to the production of that Polk County deed. As a matter of fact, I found, upon a review of 500 pages of his banking records, I found payments to the Polk County tax collector and followed that through and found the deed. Never objected on any basis. The so-called failure to produce this Rule 37 basis for finding his request to be found that his due process rights were somehow violated. Here, it makes no sense. He never objected. He also never objected on the basis of it failing to comply or be consistent with the pleadings in this case. Rule 15 states, of the Federal Rules of Civil Procedure, state that where a matter is tried with the consent either implied or so stated of the parties, it shall not, it must be treated in all respects as if it was raised in the pleadings. In particular, Rule 15b2 states, when an issue not raised by the pleadings is tried by the parties, expressed or implied consent, it must be treated in all respects as if raised in the pleadings. Four minutes remaining. So, I would submit that the bankruptcy judges, Judge Katz's finding under 727A4A should also be affirmed in this case because the, I would submit that the pleading was adequate, was sufficient under Rule 9. I believe that the, I would submit that it was adequately pled. But, the defendant had an opportunity when confronted with the issues under 727A4 to object on the basis of it failing to be consistent with the pleadings and he failed to do that. I would submit that the decision was thoughtful, that the, as I said, 40 pages long, followed a five-day trial, seven witnesses, and 90 exhibits. All of the exhibits were exhibits to which the defendant agreed. These were in our joint pretrial memo. We agreed that all of the banking records were admissible. We agreed that the so-called ledger were going to be admissible. And so, all the defendant really has a basis to be concerned about or, you know, to object to is that he wanted me to disclose to him what my line of cross-examination was going to be. I went through those records. I found that the basis for his misrepresentations to the court and to the trustee and, again, that it was all in evidence. There was no violation of either a discovery rule or any rule of evidence during the course of the trial. And I would request that you affirm the decision of the bankruptcy, Judge Katz, dated May 10, 2021. Thank you. Thank you. Thank you, counsel. At this time, Attorney Earhardt has a two-minute rebuttal. Attorney Spinola, if you could mute your camera and your audio. And, Attorney Spinola, reintroduce yourself on the record to begin. My name is James Earhardt, on the record again. Just briefly, in terms of the ledger, was that kept contemporaneously or was that created later and after the fact to help the trustee? I looked at my brief and it said, Richard had personal knowledge and prepared a ledger upon request, substantially by tax returns and corroboration from the tenants to the trustee. So I believe that ledger was prepared upon request of the trustee and was not contemporaneous. Okay. Thank you. And on page 19 of the brief, we discuss how the trustee's testimony about how he walked to the two properties with the debtor, talked to the tenants. And so there's only two properties involved, and there wasn't much rent roll, and that's the fundamental truth. There wasn't much rent roll, and therefore, when you have de minimis income coming from de minimis number of properties, you shouldn't be denied a discharge on $1.7 million in debt if you have almost no income from these properties. Yes, years ago he did, but as the bank state came forward and the year progressed, there wasn't. I'm not sure if it's the A4, because if you get past, I think A4 has been briefed up. Certain things my sister counsel said is just Polk County, that was not something we agreed to. It was shown to us when the witness was put in the stand. The E-Trade documentation wasn't the pretrial memorandum. It wasn't listed in the exhibit. Was Ms. Spinola right when she said that when Polk County was brought up at the hearing, and the cross-examination about it occurred, that there was no objection? Your Honor, we had a vigorous objection. Indeed, if you look on page 14. So you objected to the use of the Polk County banking records indeed? As Your Honor, as I recall, we vigorously objected. As you recall, you either did or you didn't. Yes, I believe, Your Honor, we did. I believe we did, yes. Indeed, there's on page 914, we talk about a colloquy the judge had with Ms. Spinola, where she says, why wasn't this all done before the discovery deadline? And then she goes to Ms. Spinola, well, then ask for more time or something. This is crazy, but go ahead. So we had brought up the judge repeatedly, subpoenas to the witnesses. That's time. So fundamentally, if I may make a quick last sentence, to get to A4, you've got to get past A3. And the record shows he only had a few number of rental-producing properties. And if we allowed this denial of discharge, any man who's got a triple-decker, who doesn't keep documents for a year, could be denied a discharge. That's what this is about. This is taking Simmons on steroids. Thank you, Your Honor. Thank you. Thank you. That concludes arguments for today. Do I not have a rebuttal? No. No. Thank you.